UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

IMAN MAHDI MOHAMAD,

           Plaintiff,

           v.

ANDREW SAUL, COMMISSIONER,

           Defendant.

**Hon. Hugh B. Scott**

**18CV1258**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 10 (plaintiff), 11 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 13, reassignment Order, Oct. 4, 2019).

## PROCEDURAL BACKGROUND

The plaintiff ("Iman Mahdi Mohamad" or "plaintiff") filed an application for disability insurance benefits on November 21, 2014 [R. 19]. That application was denied initially. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de

novo and concluded, in a written decision dated September 20, 2017, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 28, 2018, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 9, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 10, 11), and plaintiff duly replied (Docket No. 12). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 42-year-old Iraqi refugee with an equivalent high school education, attended junior high school in Iraq and was fluent in Arabic but not in English [R. 410, 32, 23, 22, 24]. Plaintiff is a mother of two children (ages 7 and 11) [R. 24] but had no past relevant work [R. 32].

The ALJ deemed the following as severe impairments: reported anxiety disorder, possible intellectual impairment, personality disorder, and PTSD [R. 21]. Plaintiff also claims having ovarian cysts but the ALJ concluded that this was not severe because it was treatable for a limited duration and only slight work-related limitation [R. 21]. She also claimed as impairments left knee pain, psoriasis, and obesity [R. 21, 22, 410]. As for the knee pain, plaintiff was prescribed ice, anti-inflammatory, and exercises at home; the ALJ concluded that this was not a severe impairment [R. 21, 410]. Plaintiff's psoriasis was treated with ointment [R. 22]. As for plaintiff's obesity, she did not know her weight but during an examination she

weighed 205 pounds and was 5'7", with a body mass index of 32.1 (with obesity deemed at 30), the ALJ factored in obesity in assessing her eligibility for disability coverage [R. 22, 391, 395].

## MEDICAL AND VOCATIONAL EVIDENCE

Plaintiff claimed she was disabled due to PTSD and major depression [R. 24]. At Step Two of the five-step analysis (described below), the ALJ evaluated plaintiff's mental impairments under Listing 12.04, 12.06, 12.08, and 12.15 and "Paragraph B" criteria [R. 22]. The ALJ found that plaintiff had mild limitations for most of the "Paragraph B" criteria and moderate limitation for adapting or managing oneself, concluding that plaintiff did not meet those criteria [R. 22]. The ALJ also found that "Paragraph C" criteria were not met since the record did not show plaintiff did not have only marginal adjustment and that she was able to manage daily activities independently, can shop with her husband, and spend time with others [R. 22]. As for Listing 12.05, intellectual disorder, to meet this listing plaintiff needed to satisfy either "Paragraph A" or "Paragraph B" criteria for that listing and needed deficits in adaptive functioning [R. 23]. The ALJ then found that "Paragraph A" was not met because plaintiff was found to have participated in normal daily activities [R. 23, 269, 183-86]. ALJ concluded that plaintiff had no deficits in adaptive functioning [R. 23]. As for "Paragraph B" criteria, the ALJ found that these also were not met, since plaintiff did not have an IQ score 70 or below, or IQ score between 71 and 75 and verbal IQ of 70 or less and had no cognitive deficit concerns [R. 23]. Her treatment notes from January 16, 2015, found that plaintiff's fund of knowledge "seems at least average" [R. 262, 23].

At issue here are the opinions of the consultative psychologist and the medical expert retained to review plaintiff's medical records. Dr. Susan Santarpia, Ph.D., examined plaintiff

3

for a psychiatric evaluation [R. 265]. Plaintiff's husband served as interpreter during the evaluation [R. 265]. Plaintiff reported PTSD, having left her mother's house in Iraq on an errand in 2006 when an explosion killed her mother; plaintiff felt guilt and dysphoric mood due to this [R. 265-66]. Plaintiff then moved to the United States in 2009, leaving behind family and not being present for the death of her father [R. 266]. Plaintiff reported that counseling at Lake Shore Behavioral Health and medication control and stabilize her symptoms [R. 266]. Dr. Santarpia noted mild impairment with attention and concentration due to difficulty with interpretation [R. 267]. While plaintiff reports not doing any cleaning, cooking, laundry or shopping, Dr. Santarpia states that plaintiff is able to manage her own money [R. 267]. Dr. Santarpia concluded that plaintiff could follow simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits [R. 267, 30]. Dr. Santarpia recommended vocational training and rehabilitation [R. 268]. The ALJ then commented that this evaluation was consistent with psychiatric problems "but alone did not appear to be significant enough to interfere with daily functioning" [R. 30, 268].

The ALJ posed interrogatories to medical expert Dr. Alfred Jonas after the hearing [R. 453, 519, 19]. It is unclear from the record why a medical expert was called. On June 19, 2017, Dr. Jonas found it hard to conclude from the record to determine whether plaintiff met Listings 12.05, 12.06, 12.08, or 12.15 [R. 515, 23]. Since plaintiff's husband could only work for 20 hours a week to be home for the other time, Dr. Jonas concluded that plaintiff could manage during those 20 hours and care for herself and their two children, and then plaintiff could

4

perform simple and many complex tasks [R. 510, 31]. Dr. Jonas guessed as to plaintiff's ability to interact with supervisors, co-workers and the public [R. 511, see R. 533 (retaining earlier finding)], initially noting she had moderate to marked limitations in the ability to interact appropriately with the public and co-workers [R. 511] although the ALJ noted that this opinion "was not clear in the evidence" [R. 32]. Dr. Jonas noted that plaintiff possibly completed a GED in Iraq and reported performing independent activities at home while her husband worked, indicating that she can perform simple tasks [R. 510, 514, 32]. Dr. Jonas disagreed with Dr. Santarpia that plaintiff can manage her benefits in her own best interest [R. 511; but cf. R. 267]. Dr. Jonas also noted that plaintiff did not speak English and her husband translated, so her translated statements about her mental capacity "are not adequately supported" in the record [R. 517].

On August 28, 2017, Dr. Jonas updated his findings, noting that nothing changed from his assessment of plaintiff's ability to understand, remember, and carry out instructions [R. 532] or her ability to interact with others [R. 533] or his earlier findings in general [R. 535, 536, 537]. Dr. Jonas did not know plaintiff's other capabilities (such as her ability to concentrate or her ability to adapt or manage herself) were affected by her impairment [R. 533]. Dr. Jonas found that plaintiff "seemingly [could] not" manage benefits in her own best interest [R. 534]. Dr. Jonas noted ambiguity between mental retardation and exaggerated portrayal of symptoms in plaintiff's testimony [R. 539]. The ALJ gave significant weight to Dr. Jonas' opinions [R. 32].

The ALJ found that plaintiff now had a residual functional capacity ("RFC") that she should avoid heavy exertion work, but she could perform medium exertion work [R. 23]. Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently. A secondary

5

possible mental impairment, she could understand, remember, and carry out instructions for routine, repetitive type of unskilled work. She could sustain attention and concentration for two-hour segments of time in and eight-hour day. She could tolerate brief and superficial contact with others on an occasional basis. She could adapt to changes in the work setting, for routine, repetitive type unskilled work. Plaintiff should avoid fast paced or high production goal work. [R. 23.]

The ALJ states that this RFC is supported by the medical evidence of record, the analysis of Dr. Jonas, psychological consultant Dr. Santarpia's assessment, plaintiff's conservative treatment of her ailments, her non-compliance with some of the treatment prescribed, her reported activities, and inconsistencies in other areas [R. 32, 31]. Assessing plaintiff's allegations, the ALJ concluded that her allegations were "less than fully consistent with the evidence," and the limitations in the RFC "contain all inferences regarding the claimant's impairments and the degree of severity thereof" [R. 32].

The ALJ posed hypotheticals to the vocational expert of a claimant with similar age, education, language fluency, work experience, and plaintiff's RFC and the expert opined that a hypothetical claimant that can perform medium or light unskilled work could perform medium exertion occupations such as kitchen helper, cleaner, laborer, conveyor feeder or light exertion occupation as a housekeeper, cleaner [R. 33, 54-56]. The ALJ asked a further hypothetical, what occupation could a claimant with plaintiff's age, education, work experience, language proficiency (not in English), having rare to no public contact perform [R. 33, 56-57]. The vocational expert replied that the number of housecleaning jobs erodes by half, but the medium cleaner occupation does not require public contact [R. 33, 57]. ALJ then asked if the

6

hypothetical claimant is off task 25% of the workday, requires 2-3 unscheduled breaks, and would miss work 3-4 days a month; the vocational expert stated that such periods of being off task or not at work would preclude employment [R. 34, 57]. The ALJ rejected this last opinion because the evidence did not support the hypothetical limitations [R. 34]. Accepting the first opinion from the vocational expert, the ALJ concluded that plaintiff is not disabled [R. 34].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

I.  General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience,

7

engage in any other kind of substantial gainful work which exists in the national economy . . . ."
42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical

8

and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the ALJ improperly relied on opinion of consultative examiner Dr. Santarpia [R. 26, 30, 265] and medical expert Dr. Jonas [R. 19, 31, 510, 532] (Docket No. 10, Pl. Memo. At 1, 13-15, 15-17). Plaintiff next contends that the ALJ failed to develop the record (id. at 18-19). The RFC is not supported by substantial evidence (id. at 20-23). Finally, the ALJ improperly evaluated plaintiff's credibility (id. at 23-30).

Defendant responds that the ALJ properly considered the medical opinions (Docket No. 11, Def. Memo. at 4-7) and properly developed the record (id. at 7-10). Defendant argues that substantial evidence supports the RFC assessment (id. at 11-12). Defendant next contends that the ALJ properly assessed the consistency of plaintiff's subjective statements (id. at 12-15),

9

arguing that the ALJ could evaluate plaintiff's credibility consistent with the other evidence (id. at 13-14).

In reply, plaintiff still contends that the ALJ improperly relied upon Drs. Jonas and Santarpia's opinions (Docket No. 12, Pl. Reply at 1-3). One part of the record not developed was the lack of intellectual testing noted by Dr. Jonas and not fully developed by the ALJ (id. at 3-4).

The ALJ has the discretion to call medical experts, but one commentator stated that they rarely do so, Frank Bloch, Bloch on Social Security § 5:6 (2019). These experts are retained to testify or provide expertise for the administrative hearing, id. § 5:9. The Supreme Court, in Richardson v. Perales, 402 U.S. 389, 408 (1971), stated that a medical expert "is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner. He is a neutral adviser," see also Bloch on Social Security § 3:27 ("in particularly difficult cases, an expert's opinion may be required"). Since these experts rarely examine the claimant or have a treatment relationship with them, their opinions are viewed as other non-examining professionals, Bloch on Social Security § 5:1; 20 C.F.R. § 416.927(f).

The record here, however, appears not to be complex The ALJ referred the objective record to Dr. Jonas for his opinion [R. 19, 453, 519]. Plaintiff cautioned against the ALJ relying upon a non-treating, non-examining doctor's opinion such as was done here, especially evaluating the psychiatric diagnosis (Docket No. 10, Pl. Memo. at 16 (citing cases)). Plaintiff finds error in giving Dr. Jonas' opinion great weight because it violates standards in this Circuit and that Dr. Jonas never rendered an opinion (id. at 16-17).

I.      Reliance upon Opinion Evidence

The ALJ relies upon the opinions of Dr. Jonas and Dr. Santarpia but these opinions are inclusive and rely upon plaintiff's translated statements about her condition. Dr. Jonas asked if plaintiff was independent during the 20 hours a week her husband was at work [R. 510] but Dr. Santarpia reported that plaintiff did not perform household chores [R. 267], presumably during the 20 hours a week her husband was away at work. While Dr. Santarpia examined plaintiff Dr. Jonas reviewed her files before making his opinion [R. 453, 519] (cf. Docket No. 12, Pl. Reply at 2 (Dr. Jonas was "a non-examining, non-treating doctor")).

In Zhang v. Berryhill, No. 17CV6492, 2018 U.S. Dist. LEXIS 104990 (W.D.N.Y. June 22, 2018) Judge Telesca found the ALJ there erred in also granting great weight to the consultative opinion for a non-English speaking claimant, id. at *16. Judge Telesca emphasized that the then-treating physician rule, 20 C.F.R. § 416.927, is "even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time," Zhang, supra, 2018 U.S. Dist. LEXIS 104990, at *16, quoting Nasca v. Colvin, 216 F. Supp. 3d 291, 297 (W.D.N.Y. 2016) (Telesca, J.) (citation omitted). The treating physician with longitudinal care "is better positioned to evaluate the plaintiff's disability than a doctor who observes the patient once for the purposes of a disability hearing," Zhang, supra, 2018 U.S. Dist. LEXIS 104990, at *16 (citing Nasca, supra, 216 F. Supp. 3d at 297, citing in turn Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993)). One discrepancy Judge Telesca noted was that the ALJ found that claimant was not fluent in English, but the consultant found that the claimant's speech was fluent and intelligible despite the lack of an interpreter, id. at *17.

11

Similarly, Dr. Santarpia made findings based upon plaintiff's translated statements by her husband [R. 265] that the ALJ gave it some weight [R. 30]. This reliance, as discussed below, rests upon plaintiff's translated impressions of her mental condition.

Here in this case, plaintiff was treated by Dr. Myron Glick who noted her severe PTSD [R. 30-31, 368-69]. The ALJ, however, gave these assessments little weight concluding that 'no work-precluding mental impairment is shown. The assessment appears to be based on the claimant's self-reports, i.e., limited daily activities" [R. 31]. Plaintiff also saw nurse practitioner Adrienne Roy to manage her medication [R. 257, 25, 26-29, 31]. The ALJ reviewed Ms. Roy's notations and the note from June 3, 2016, that plaintiff had not been in tears during that session; the ALJ concluded that they were not corroborated by other sessions [R. 29]. Ms. Roy noted in March 18, 2016, that plaintiff stated that she was completely nonfunctional at home [R. 423-24, 31]. The ALJ found, however, no significant health problem noted there [R. 31].

Dr. Jonas pointed out areas where he could not conclude because the facts were not clear to him [R. 513, 514, 515], pointing out ambiguities not resolved in the testimony [R. 535, 539] (Docket No. 10, Pl. Memo. at 17). As plaintiff accurately characterizes Dr. Jonas' presentation, the "'opinion' is merely a statement that he cannot given an opinion" (id.) yet the ALJ gave this statement great weight. The ALJ thus had nothing to give great weight save the questions posed by Dr. Jonas. Again, it is not clear why an independent medical expert was brought in for this application and Dr. Jonas' submission did not illuminate. It was **error** for the ALJ to give that opinion great weight to determine plaintiff's disability.

II.   Plaintiff's Credibility

Plaintiff argues that the ALJ erred in considering her credibility as to her subjective complaints (Docket No. 10, Pl. Memo. at 23-30). SSR 16-3p, effective March 16, 2016, replaced an earlier Social Security Ruling that called for assessment of the credibility of a claimant's statement (SSR 96-7p), see also Va. L. S. v. Comm'r of Soc. Sec., No. 5:18CV937, 2020 U.S. Dist. LEXIS 17886, at *15 n.3 (N.D.N.Y. Feb. 3, 2020) (applying SSR 16-3p to ALJ decision rendered after March 2016). Plaintiff cites Social Security Ruling 16-3p for the proposition that a single statement from ALJs that the claimant's statements about symptoms were considered, is not enough (id. at 24; see also Docket No. 11, Def. Memo. at 13) but then refers to the former Social Security Ruling 96-7p on not rejecting subjective statements of intensity and persistence of pain (id. at 25). Defendant argues that it is within the discretion of the Commissioner to evaluate plaintiff's credibility (Docket No. 11, Def. Memo. at 13-14, citing Mimms v. Sec'y of Health & Human Servs., 750 F.2d 180, 186 (2d Cir. 1984), applying the pre-SSR 16-3p revised standard.

Ruling 16-3p eliminated credibility from "the 'sub-regulatory policy' because the regulations themselves do not use that term. Instead, symptom evaluation tracks the language of the regulations," Natashia R. v. Berryhill, No. 3:17CV1266, 2019 U.S. Dist. LEXIS 44289, at *28 (N.D.N.Y. Mar. 19, 2019) (Wiley Dancks, Mag. J.), while the standard for evaluating subjective symptoms remains unchanged, id. at *28 n.7. SSR 16-3p calls upon ALJs to "consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms," SSR 16-3p, 2016 SSR LEXIS 4, at *2 (2016). Thus, the ALJ should

13

not assess plaintiff's credibility. The ALJ may assess what plaintiff says as compared with her activities of daily living and the medical record.

Unlike most cases, plaintiff's statements come into question because they come to us in translation. That issue is considered next in development of the record.

III. Development of Record

Plaintiff objects to how the ALJ developed the record, as noted by Dr. Jonas in his opinion of the gaps in the record that precluded a conclusion about plaintiff's mental condition (Docket No. 10, Pl. Memo. at 19). She also argues that these gaps thus led the ALJ to come to conclusions based on her lay understanding of the medical evidence (id. at 21-23).

The key issue here is that plaintiff is an Iraqi who is not fluent in English. Plaintiff testified through an Arabic interpreter [R. 19, 40, 42-43]. Defendant states that the ALJ cited plaintiff's use of an interpreter in factoring plaintiff's concentration (Docket No. 11, Def. Memo. at 12, 5) [R. 267]. Although all parties note that plaintiff was not fluent in English but was fluent in Arabic (Docket No. 10, Pl. Memo. at 12; see also Docket No. 11, Def. Memo. at 4, 8, 15), neither side discuss the effect of this language barrier on her claim. She was questioned through an interpreter, in some instances interpretation by her husband when examined by Dr. Santarpia [R. 265]. Plaintiff had at least one session with Ms. Roy with a translator wherein her husband explained his concerns about leaving plaintiff alone while he worked [R. 423]. Much of Dr. Jonas' inability to conclude from his review of this record [R. 510, 517, 532] stems from the language barrier with plaintiff. Thus, no one has a true, unfiltered assessment of plaintiff as to her mental impairments and capabilities.

This case is distinguishable from Causevic v. Berryhill, No. 17-CV-2006-LRR, 2017 WL 9620396 (N.D. Iowa Sept. 27, 2017) (Williams, Ch. Mag. J.), adopted, 2018 WL 1470255 (N.D. Iowa Mar. 26, 2018), where that plaintiff was born in Bosnia and spoke no English, requiring an interpreter to communicate, 2017 WL 9620396 at *1. At Step Two of the Social Security disability analysis, the ALJ found that plaintiff had severe impairments of anxiety disorder and post-traumatic stress disorder but rejected plaintiff's claimed decreased intelligence as a severe impairment, id. at *3. Plaintiff argued that this determination was flawed because the ALJ disregarded plaintiff's decreased intelligence, id. at *4. One consultative psychologist conducted psychological testing, but not complete intelligence quotient testing, on plaintiff through interpretation by plaintiff's friend, id. The ALJ there (unlike in the present case) assigned no weight to the consultative psychologist's findings "because there was no validity to using that assessment with a non-English speaker, especially when the testing was conducted through the use of a personal friend as translator," id. at *5. Noting that the plaintiff "readily understood and answered all translated questions," id. (again, not found in this case), the ALJ there found that the low-test results were inconsistent with plaintiff's hearing presentation and his work history, id. The consultative psychologist then wrote to the Commissioner that the Magistrate Judge reported "buttressed the ALJ's findings"; the psychologist there indicated his doubts that plaintiff understood the intelligence testing because (1) they were based upon the American culture and (2) plaintiff used an interpreter to take the test, especially when that interpreter was a friend or relative of plaintiff, id. Given that psychologist's support of "the ALJ's own concern," the Magistrate Judge found that "it is clear that the ALJ was correct to question the assessment results on these grounds" and this recommending affirming the denial of

benefits, id. at *5, 7.  The plaintiff objected to the Report and Recommendation but did not object to the portion of that Report discussing the cultural basis of the intelligence testing or the fact that his friend served as interpreter during the testing, which the court later deemed were waived from de novo review, 2018 WL 1470255, at *3 (adopting Report).  Instead, plaintiff argued that this scenario should have led the ALJ to conduct additional testing, id. at *2, 3; the court disagreed, denying that the ALJ's duty to develop the record fails when plaintiff has not met his burden of providing his disability, id. at *3 (affirming Commissioner).

The present case, however, the ALJ did not find that plaintiff understood despite translation.  Especially crucial since plaintiff's claims are for mental impairment, it was essential that the ALJ understood plaintiff's contentions and that plaintiff understood the questioning about her mental condition.  This is not a case in which the ALJ failed to provide an interpreter for the ALJ hearing, cf. Aung Winn v. Colvin, 541 F. App'x 67, 68, 71 (2d Cir. 2013) (Summary Order) (court not deciding whether plaintiff's case "before the ALJ was inhibited by the absence of an interpreter" during the hearing).  The issues here are that she furnished her own translator, her husband, before Dr. Santarpia and that Dr. Jonas (who did not conduct his own examination) relied upon Dr. Santarpia's record.

On the one hand, with her husband translating, plaintiff's subjective complaints may have been embellished, as Dr. Jonas concluded [R. 539, 32].  This is akin to the doubts expressed in Causevic, supra, 2017 WL 9620396, at *5; see also id., 2016 WL 1470255, at *3.  The ALJ thus found plaintiff's testimony to be "rather vague" [R. 29] and concluded that her allegations were "less than fully consistent with the evidence" [R.32].  On the other hand, no effort was made to get a neutral interpreter or perform psychological assessments in Arabic.  Dr. Santarpia

16

evaluated plaintiff with her husband serving as interpreter [R. 265]. This Court recognizes as the Northern District of Iowa did in Causevic, supra, 2018 WL 1470255, at *3, that plaintiff had the burden of proving her disability to have the ALJ's duty to develop the record but disagrees with the implication that plaintiff, as the non-English speaker, had the burden of providing a disinterested interpreter during her evaluation that was called for by the Social Security Administration. The consultative examination is called by the ALJ to examine a claimant if "medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled," 20 C.F.R. § 416.917. Thus, the burden is on the ALJ to conduct that consultative examination, so it accurately reflects plaintiff's condition. That burden is met by providing a neutral interpreter during the evaluation. While the Northern District of Iowa gave no weight to the consultative psychologist's findings, 2017 WL 9620396 at *5, the ALJ here gave some weight to Dr. Santarpia's opinion [R. 30] and significant weight to Dr. Jonas' opinion (based on Dr. Santarpia's opinion) and rested his findings on Dr. Jonas' opinion [R. 32] although Dr. Jonas never reached a conclusion. This was in **error**; the matter is remanded for a further examination with a neutral interpreter. Such an examination may result in finding that plaintiff's mental condition is not disabling but the present record is inconclusive on this issue.

  Plaintiff's recent past was traumatic, witnessing her mother's horrific death, leaving her native country and family, and not being present for her father's death, but it is not clear if these events caused her to have impairments that preclude her employment or do not. Upon re-examination (with an independent translator), a consultative evaluator may determine if these

traumas created plaintiff's mental impairment and whether those impairments meet a relevant Listing or otherwise rendered her disabled.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 10) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 11) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
February 26, 2020